Catron, Ch. J.
delivered the opinion of the court.
In 1783, Norris entered the land in controversy. In 1809, the grant to Williams, under which the plaintiff in error claims, was made, founded on an entry made in 1807. In 1316, Norris was about obtaining a grant, to prevent which, Williams filed his caveat, alleging Bass’s grant to be the better title. Facts were agreed, and found by a jury, presenting the respective claims of Williams and Norris. The matter was litigated with great pertinacity in the different State courts, until 1822, when the cause was finally decided in the supreme court. This court reversed the judgment of the circuit court; and proceeding to give such judgment or decree as the said circuit court ought to have pronounced, ordered, adjudged and decreed that Ezekiel Norris, the caveatee, had by virtue of his said entry, the better title to the said two hundred and forty-six and three-fourths acres of land covered by the claim of the caveator, which is the quantity interfered with by said respective claims, and which is the land in controversy. And they did further order, adjudge and decree, that a grant issue to Ezekiel Norris for the lands by him surveyed upon his’ said entry, and that Williams pay the costs.
From this judgment Williams obtained and prosecuted a writ of error to the supreme court of the United States, *327 where the cause remained until 1827, when it was dismissed from that court, and Norris obtained a grant dated 9th April 1827, and on the 30th July, 1827, brought this action of ejectment.
About ISIS, pending the caveat suit, Williams took possession of the land in controversy, and continued it by his tenants, up to the time of bringing this action. On the trial he proved the fact of possession for seven years, and relied in his defence on the act of 1819, ch. 28.
To rebut the effect of the seven years possession, Norris gave in evidence the record of the caveat suit. The circuit court adjudged that during its progress, Williams could not avail himself of his possession, and Norris obtained a verdict and judgment. The judgment as an es-toppel could well be given in evidence. 7 Bac. Ab. 40, Verdict U. Was Williams’s possession subordinate to the judgment and decree in the caveat cause? If so, the decree was correctly given in evidence against him, to prove the facts, that the suit was pending, and that it was adjudged upon its merits in favor of Norris. 1 Yerg. Rep. 349, and cases cited: Estill vs. Taul, 2 Yerg. Rep. 467: 3 East’s Rep. 351.
To determine the operation of the caveat suit upon the possession of Williams, we must enquire into its nature, and the jurisdiction and powers of the court to determine the respective rights of the parties. The powers of the court were derived from the acts of 1806, ch. 2, sec. 16, 17,1807, ch. 2, sec. 47, 48, and 1807, ch. 17. By the practice under these statutes, the powers of the courts will be found co-extensive with any conflicting rights two claimants may have, where the defendant is attempting to perfect his entry into a grant by survey.
By a liberal construction, the statutes have been extended to "one claiming granted land; and from this construction has flowed the consequence claimed for Williams in this cause, that he could hold out Norris with his old special entry, until his, Williams’s, younger title was *328 confirmed into the better right, by force of the act of lim-Rations. Had the strict letter of the statutes been pursued, and this mode of proceeding only been applied to conflicting entries, neither party having a grant, the adjudications would have been necessarily conclusive. We will take the present case as an instance, and suppose Williams had had no grant. He filed his caveat with the surveyor, alleging he had a valid, special entry; that Norris had surveyed the same land, but that his entry was not valid, he never having paid the state for the land, nor was his entry special.
Each party had the right to submit such facts as were material to the cause; on these, (being found by the jury) and on such as the parties might agree, the court proceeded to determine who was entitled to the land, and adjudged and decreed it to Norris as above.
And secondly, ordered the surveyor to certify the plat to the register, secretary and governor, that the land might be granted. Only one of the parties could lawfully have a survey and grant.
Had such decree been made for Norris, Williams would have been concluded by the adjudication, because it is an established rule of law, that a matter which has been once directly decided, shall not again be litigated between the same parties; but judgment must be directly upon the point. And such judgment may be given in evidence by way of estoppel in causes where special pleading is not required. 1 Peake’s Ev. 34: 1 Salk. 276. The extension of the statutes to protect a grantee from a cloud being suspended over his title, does not limit or impair the jurisdiction of courts to try by caveat, and determine who has the better right. The powers of the courts to adjudge and decree in favor of the better conflicting title, are as ample as if the proceedings were by bill in equity; and the decree grounded upon the facts agreed, and found by the jury, is in substance the same as a decree upon a bill; as is seen by the judgment under examination, and *329 as has been often directly or indirectly determined by this court. 2 Tenn. Rep. 210, 330: 2 Hay. Rep. 103: Mar. and Yerg. Rep. 248, Rutlege vs. Connor, Knoxville, 1831.
Had Williams filed his bill, the court had jurisdiction, and had the matters controverted in this caveat been litigated in equity, and the bill been dismissed because Norris had the better right, then the condition of the parties would have been substantially as the caveat cause left them on its final determination, with this addition, that Norris was in the situation as if he had been enjoined by Williams from obtaining a grant, or entering on the land.— Norris was in the most effectual form restrained from obtaining a grant, and had he entered could have been treated as a trespasser by Williams, without any power of resistance derivable from his superior equity.
But it is insisted Norris might have filed his bill, asking to have his better entry clothed with Williams’s legal title, he being a sub-purchaser from the State, with record knowledge of Norris’s first purchase. Admit Norris’s power to prosecute such a bill successfully, yet it could only have been a cross litigation to no end, save to avoid the effect of Williams’s possession. The caveat determined every fact, and adjudged the titles just as conclusively and as certainly as the bill could have done.
The suit by caveat having the force and effect in this case of a suit by bill in equity, was Williams’s possession pending such suit, subordinate to the litigation? We think it clearly was. The respective rights of the parties were passed upon by the judgment as they existed when the caveat was filed; to which time the decree related, as well as to the time when it was passed. It operated on the intermediate possession which it merged. Were Williams permitted to take advantage of his own wrong, (for in favor of a wrongful holding alone the statute of seven years operates,) and to violate one of the oldest and soundest maxims known to courts of law or equity, *330 the judgment and decree in the caveat would be falsified J ° and treated as an idle ceremony and delusion
The court did order, adjudge and decree, that Ezekiel Norris, (atthe time of making the decree,) hath the better title by virtue of his said entry to the land in controversy. It is admitted by the counsel for Williams, that if he had prosecuted his claim by a bill in equity, the intermediate possession between the commencement and conclusion of the suit would have been subordinate to it, and merged by the decree. In such case, and the one under examination, we think there is no material difference; if any, it is in favor of the caveat, as the more effectual remedy.
It is urged with great earnestness on the court, that this determination will shake the authority of Hickman’s lessee vs. Gaither and Frost, (2 Yerg. Rep. 200.) This is far from being the fact. In that cause Hickman was ca-■veated by Buchanan, and pending the suit Gaither and Frost by independent grants, without Buchanan’s boundary, had seven years adverse possession. After B’s title was adjudged the better, Hickman run out his entry across one side of B’s, so as to reach the younger titles of Gaither and Frost, by an oblong: whereas, had he run in a different form, they would have been unaffected.— Gaither and Frost were no parties to the caveat suit, and neither they nor. Hickman, until, he was cast by Buchanan, ever imagined that H’s entry interfered with them. They having been no parties to the caveat suit, their title was not bound by the judgment; which, had it been in Hickman’s favor, could have had no effect on Gaither and Frost. 1 Peake’s Ev. 34: 2 Yerg. Rep. 469,
The other point made in this cause, claiming the benefit of seven years possession before.the caveat was filed, on a part of .the Bass grant north of Elk river, and not on the disputed part, was adjudged below in accordance with the cases of Talbot and M’Gavock, (1 Yerg. Rep. 262,) and Hopkins against M’Queen, at Sparta, Septem *331 ber, 1832. The decision conformed to the now settled law. We think the judgment should he affirmed.
D. Craighead, for plaintiff in error.
O. B. Hayes and G. W. Gibbs, for defendant in error-
GREEN, J. dissented.
Judgment affirmed.